Good morning. May it please the Court, my name is Mary Ann Dugan. I represent the appellates in this case. I would like to reserve five minutes for rebuttal and I will keep my eye on the clock. Thank you. Your Honors, because the lower court's decision primarily focused on the, well, almost entirely focused on the good faith issue, I'm going to do likewise, unless the Court has some specific... On the what issue? Sorry, I'm going to focus on the good faith question, the first issue, presented in the briefs, unless the Court has some specific questions about the third and fourth causes of action. Regarding the good faith provision of the 1996 Telecommunications Act, this case presents two issues of first impression for this Court, I believe. I believe they're of first impression. First of all, does this type of case fall within the good faith... I'm sorry, does this case fall within provisions 206 and 207 of the Telecommunications Act, creating a cause of action?  It's tied to the question of whether the Verizon Maryland case in the Supreme Court from 2002 provides this Court with jurisdiction over that claim. The second issue is whether, if there is such a claim that can be brought, does it have to first be brought to the PUC? The... Quest has argued against both of these issues, obviously. The Verizon case from May of 2002 predates all but one of the cases relied upon by Quest. The Global Maps case from 2003 in the District of New Jersey did not mention the Verizon Maryland case, and the outcome of that case is refuted by the outcome in Verizon Maryland. In Verizon Maryland, the Supreme Court rejected the concept that the only jurisdiction a federal court can have over a Telecommunications Act case between two carriers is a review of a court determination by a state commission. But as you're implicitly recognizing that ruling isn't going to get you very far on this, you also have a cause of action. Correct, Your Honor, which is why I said that the issue that's tied with this question of jurisdiction is does Western Radio's claim fall under Section 206 and 207 of the Act? Section 206, which we quote in a reply on page 10, says that any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make a complaint to the commission or may bring suit for recovery of damages. Section 207... Sorry, that's 207. Section 206 states, in case any common carrier shall do or cause or permit to be done any act, manner, or thing in this chapter prohibited or declared to be unlawful or shall omit to do any act, et cetera, such common carrier shall be liable to the person or persons injured, thereby for the full amount of damages, et cetera. So the question is, and there's very little case law on this issue, and I acknowledge that the case law is primarily out of district courts, which are not under this court's jurisdiction, and there are some cases involving consumers who allege they were injured by a common carrier, but nothing in 206 or 207 says that a common carrier that wants to interconnect with the incumbent local carrier cannot bring a claim under 206 and 207 for violation of the good faith provision of the act. Well, now, aren't you limited to requiring that we focus on that stage of the proceeding someplace after the commission had determined the terms of an agreement to be entered into and directed the parties to present an agreement in accord with what it had found? And all of your claim, as I get it, is focused on the failure of Quest to negotiate with you about the terms of the decision of the commission. Is that not true? That's correct, Your Honor, and there is a significant gap and a fatal gap for purposes of small carriers such as Western Radio. There's a gap in the provisions of the act that tell the commission what to do. The commission reviews the open issues, arbitrates them, and makes a decision, and that happened here. And then there's 30 days for the parties to submit an order. All right. There's nothing that says what happens if the parties do not come to agreement about what goes in the order. But at that point, the parties have very little say about what's going to be in the agreement because the commission has told them, here's what is to be in the agreement. Isn't that true? That's correct. And so if you don't agree on what should be in the agreement, it's only because you don't understand the order of the commission. True? You don't understand or you're not complying. Correct. Well, all right, and if a party doesn't understand the terms of the holding, maybe the way to find out is to go back and ask the commission what they meant. Or if they're not complying, then the other side gets to submit an agreement in accord with what the holding of the commission is, and it's over. And isn't that wrapped right into the mainline provisions of this whole scenario that if you have any quarrel with what the commission did, you have judicial review in that vehicle? And we're talking about, as I get it in this case, nothing more than the inability of the parties to agree on what the commission said. Western Radio alleged that Quest, in fact, affirmatively failed to act in good faith in negotiating, which is required by the commission. But it's only in negotiating the drafting of what the commission said it wanted drafted. But that's what they have a duty to do under Section 251C1 and 252B5. Quest has a duty to negotiate in good faith to reach agreement with Western Radio. Now, if you don't allow any way to enforce that provision... There is a way to enforce it, and it's exactly what happened here, and it's similar to what Judge Levy said, which is that the commission, in the course of deciding what the agreement is, can decide on whether there was compliance with 251, including the good faith obligation. So if, for example, as I understand it, and then that would be wrapped into a 252 cause of action, if you claim that there was not good faith. Why not? What's wrong with that reading? Well, there's two things wrong with that. That's what happened here, as I understand it. And there are other commission rulings as well in which they have reached good faith issues. Are there not? There are other instances in which commissions have reached good faith questions in the course of deciding what the agreement is. I'm not aware of any specific case law addressing a commission decision in any state on a good faith allegation. And I think we are in a similar situation to the situation addressed by the Supreme Court in the Verizon case, where there was a dispute about what was meant by a portion of the interconnection agreement. And in that case, Verizon argued that... Because it was already a finished agreement. But here, we have a situation in which the question is, what is the agreement? And in the course of deciding what is the agreement, compliance with the procedural prerequisites is part of the commission's task and is also part of the court jurisdiction under 252E6. No? Well, what the court has jurisdiction over under that provision is a determination. And there was a determination here. The determination was, these are the provisions that... This is my arbitration decision on these open issues. That's the determination. It came out in an actual order. And that is the type of determination that is reviewable under... In any case in which a state commission makes a determination under this section, any party agreed by such determination being in action to determine whether the agreement or statement meets the requirements of Section 251. So, there was determination, but there wasn't an agreement. You can't do it, as I understand it, until there's an agreement. Once there's an agreement, you can decide whether it meets the requirements of 251, one of which is bargaining in good faith. There's circularity to that approach, which appears on its face to be an acceptable approach. The problem with that approach, number one, the commission has no explicit jurisdiction over the dispute that arose between these parties. The department, the PUC's jurisdiction is to determine, make a decision on open issues that are brought to it under very specific procedures about how one... Has the authority to reject an agreement or any portion thereof if it does not meet the requirements of Section 251, which again includes the good faith requirement. That, yes. And the case law that interprets that provision basically talks about what's in the public interest. For example, if two parties come together and say, we want to interconnect and do X, Y, and Z, and the PUC says Z would have... One requirement of 251, but another one is that there be bargaining in good faith. But, Your Honor, that interpretation would also deny the outcome in Verizon, Maryland, because in Verizon, Maryland, the parties had a new... No, it doesn't, because it doesn't answer the question of whether it's exclusive. That's another question, right? But it at least answers... Because that's the question they didn't answer there. They never said... They said, we're not deciding whether 252E6... Whether there's 252E6 jurisdiction because there's 1331 jurisdiction. Well, but they also said that this isn't something that had to have gone through the PUC. I'm sorry? The Supreme Court also said that this is the type of case you can bring to court rather than going through the PUC. But the other thing they never got to is the private cause of action problem, because ultimately saying that there's jurisdiction in 1331 is not going to get you very far unless you have an applicable private cause of action, and that's why you're gravitating to 206 and 207, and I understand that. Yes, and I do think that the court will have to address, as a matter of first impression, as I said, whether 206 and 207 cover this kind of claim that Quest has violated the good faith provision, and that violation has caused actual money damages to Western. This is not... Oh, no. Sorry. I'm sorry to interrupt you. You go ahead and finish. Well, I was just going to say that the question under the good faith claim is not whether the PUC's decision, determination, is right or wrong. The question is, did Quest's failure to negotiate in good faith actually cause money damages to Western? That is the claim that is being brought under that cause of action. But if this case proceeded to trial, what would you litigate? You would first litigate the meaning of what the commission had decided and whether or not these parties were bargaining in bad faith about getting that decision on paper. That's it. That's all there is to this case, is it not? Yes, and whether that caused damages to Western, which the PUC has no jurisdiction over that. And that's not greatly different from what we witness in the courtroom so many times when a judge will say, here is my decision. Now, somebody presented judgment to that effect. And we don't have much room to wiggle after that occurs. You either do what the judge wants or you're out of luck. And I presume that the commission here was telling the parties, you put into writing in the form of an agreement what the commission has just decided. Now, there isn't much room for anybody to affect that unless the commission says it didn't mean what it said. And that's the way this case is pleaded, right? Well, it's pleaded as a case for damages. This claim is pleaded as a case for claims of damages. A bad faith in failure to put in writing what the commission had directed the parties to put in writing in the form of an agreement. That's all it's about. It's not about any bad faith that occurred when your client walked in the door at Quest Place of Business and said, I want access. It has nothing to do with anything until the commission had already ruled. Do you agree with that? Well, what the provision says is that the parties must negotiate in good faith to reach agreement under section 252 of the act. Specifically, this type of situation. And 206 says that if you claim that a commentator has damaged you, you bring it either to the QC or to the court not to vote. Okay. Isn't the conundrum that Judge Levy is surfacing is that, and this may well go to whether you should exhaust by going first to the PUC, but the PUC has made a declaration of what is supposed to be in the agreement. The case now moves into court because you say Quest is unreasonably and in bad faith digging its heels in and not adhering to the implementation of what the language of the PUC order said and intended. So a judge, therefore, would have to be in a position of interpreting whether Quest was reasonable in its understanding of what the PUC said. The awkwardness of that for a court is that it has to then interpret what the PUC meant. And, in fact, the PUC might, faced with the argument, said, no, no, we see we were a little ambiguous here, and so on and so forth. As I understand what you were trying to accomplish here is to find a method, a judicial or maybe an administrative method, to call Quest on its intransigence, in your view, so that your client isn't suffering these losses that are all accruing up, you'd say, because of the delay in implementing the arbitration order. That's correct? That's correct. Okay, so the district court said it didn't have subject matter jurisdiction. If we concluded, hypothetically, that it had 1331 jurisdiction to consider your legal claim, what are you suggesting is the appropriate action of this court to go ahead and decide on the merits, whether there's a private right of action under 252 or whether it arises under 206, 207, and then, having reached that question, whether or not you're required under either 252 or 206, 207, to go to the PUC in the first instance? Yes, what we're asking the court to do is, well, we're asking the court to remand for a trial, but to do that you would have to determine that this case falls under 206 and 207. What about the fact that the agency now has decided the question? Well, the agency has now imposed Quest's version, but that's not what this lawsuit is about. This lawsuit is about what happened in the interim and the damages that accrued from that. But in doing so, they obviously made a determination that Quest's version was consistent with the order. So they decided the issue that you want us to decide. They didn't decide whether Quest acted in bad faith or not. It's the same question, you see, because there are many other forms of bad faith questions, but this particular one collapses into the merits question, does it not? I disagree, Your Honor, because for one thing, for example, Quest submitted its draft interconnection agreement to Western just a couple of days before the 30 days ran out. So, for example, part of the bad faith argument is not just that it had the wrong provisions in it, but that they didn't allow Western enough time to review the document within the deadline. If you eventually had enough time, you still didn't do it because you said that they were substantively wrong. I mean, you eventually had more time, but you still didn't agree to it. Well, that's an issue of fact, though, Your Honor, whether that constitutes bad faith. In other words, there can be bad faith in what the terms are of the agreement, but there can also be bad faith in the... The terms part of it, which is, I understand, the core of your problem, what is the same as what the agency eventually decided, is it not? Well, first of all, let me explain that these parties have a very long history, of course, of dealing with each other that has gone up and down over the years, and it's not in the record because this was on the pleading, but there are issues that came up over time that led Western Radio to believe that the question was not operating in good faith. The question is for you... You didn't answer my question, which is, insofar as, and my understanding is that it is the core of your good faith argument, is that they didn't memorialize in their draft what they were directed to memorialize. That merges into the merits, does it not? That's correct, Your Honor. That is the core, that is most of what your... The rest of it I haven't heard before, but in your brief, what you've been stressing is the notion that they didn't memorialize the agreement properly. Maybe there's something else out there, but it's not the core of anything. Well, the timing was also an issue. Okay. So, I think, you know, I see my time is up. Why don't you save it for rebuttal. Okay, thank you. We'll give you a minute for rebuttal. Please. May it please the Court, my name is Alex Duarte, and I'm Corporate Counsel with Quest here in Portland. I was also one of the two attorneys representing Quest in the underlying arbitration proceedings before the Public Utility Commission of Oregon, or PUC, as well as in the underlying district court action with Judge Aiken. And so you're responsible for the bad faith negotiations? I'm not a negotiator, I'm Corporate Counsel. There you go. Your Honor, this case presents a very unusual and very premature procedural posture, and in large part because of that premature procedural posture, the district court dismissed it. I found it didn't have subject matter jurisdiction. That's correct. So we've run through that. Let me just, so I can understand where you're coming from here. What seems to be the essence, procedural essence of this case, is that once the PUC hands down its decision, then the statute contemplates that the parties will in good faith, expressly have the obligation, in good faith to negotiate, reducing that to writing. Let's suppose that Quest decides this is slam dunk, but let's exact as much time and delay in implementing this as we can, because every day that goes by we aren't subject to this official order. We're making a lot of money. That's the hypothetical, okay? So what happens then is that you drag out the process, you know, smoking gun memo in the file says that's exactly what you're doing, and at the end of the day the PUC rejects Western's view, adopts your view, and you've accomplished by, let's say you generically, have accomplished by this deliberately bad faith delay of the process. You've made your client, you know, some healthy dollars in the interval. What's the remedy under those circumstances, if any, for the aggrieved Western radio? First of all, Your Honor, the remedy is to present that claim before the PUC. Based on what? Based on the allegations that one party is not acting in good faith. You have to remember the process itself is a very truncated process. It's supposed to take no more than nine months, 270 days, when the party, the requesting party, usually the competitive party, requests a new interconnection agreement. Between the 135th day and the 160th day of that process, you have to file a petition with the PUC, and the PUC then takes over and arbitrates the disputes and sets forth preliminary testimony, briefing. Already done that. Right, exactly. We're talking about implementing it now. Okay. Where's the authority? What do you look to to say that the process is, now that you're trying to reduce it to writing, instead of going back into the district court and giving me the findings and so on, you can go back before the judge and say, look, these people are just screwing us around. Absolutely, Your Honor. Where's the authority under the Act 252, 251, whatever it is, or 206, 207, to, as you say, go complain to the PUC and get them to either dislodge, quest, intransigence, or socket to them for damages for the consequences of their bad faith for life? Certainly, Your Honor. And the place for that is to object to that behavior at the PUC. Here's what happens. Wait a minute. There's a 30-day period in which the agreement is supposed to be memorialized. Exactly. Now, I gather that if that doesn't happen, what could be done is exactly what you did, which is to go in with your version of the agreement and say to the agency, these people didn't sign it or whatever. Right. But suppose, for example, there are many varieties of not negotiating in bad faith. I tried to pause at one. I'm still trying to get an answer to it. Well, Your Honor. But I gather part of the answer to that is there is a deadline. There is a deadline, Your Honor. And so what would happen is the parties would exchange a draft that one party believes, usually the party that prevails on most of the issues, in this case, quest, complies with the arbitration order. And then if there's an issue, they can negotiate that. And then by the 30th day, submit it to the PUC. If Western Radio, as they say, did not believe that the draft that quest presented to Western Radio did not comply with the arbitration order, their remedy was to go to the court, to the commission, and say, wait a minute. This provision doesn't apply. Section 5.3 doesn't apply. Section 4.2 is inconsistent with the arbitration order. You can make those objections. But here, Western Radio did absolutely nothing. They did not tell the PUC, we disagree with this provision. They did not submit an alternative form of the interconnection agreement to say, we believe these provisions are the appropriate ones and consistent with your order. They basically did nothing. And so we submitted on the 30th day that here's what we believe complies, and they refused to sign it, but we think it complies. This is what I think is the hard question. Let's assume you're right about all of that and that there is, in fact, jurisdiction there for under 252E6 if that doesn't happen. But under Verizon, which specifically said we're not even going to decide whether 252E6 applies because there's 1331 jurisdiction. Why don't we take that approach? Let's assume everything you're saying is so, but why isn't there an alternative as well? And then my second question is, if so, why isn't there a cause of action under 206 and 207? Well, first of all, 206- And let's also assume for the moment that that might be an exhaustion requirement. Sure. A prudential exhaustion requirement. Well, let me answer, I think there's two questions. The first one is Verizon Maryland only said that they would not divest, the court would not divest jurisdiction where there's otherwise 1331 federal question jurisdiction. 252, though, has a specific process for the arbitration of a new interconnection agreement. Verizon Maryland involved the interpretation of a previously approved agreement, so the 252 process- But they specifically said- No, they didn't say that. They said we're not deciding whether it applies. That was my understanding. Your Honor, basically all the cases that have come since Verizon, and there have been a number of cases, including one involving the sister company of Western Radio down in Arizona that came out in March, that basically said, and I can probably read from that best, it basically said, no, all that did was if there is a previously approved agreement and there's an issue about interpretation, the courts retain jurisdiction. But when there's a specific administrative process set forth in the statute, 252, that is what you need to do first before you can be able to have- All right, so let's assume you're right. Your Honor, would you please cite 252 where it says that they can come in during this window of negotiation that says they can come and they have an action against Quest for bargaining or not negotiating in good faith. Where is it? In 252, I'm not aware of precisely any language that says during that 30-day period, if the parties don't negotiate, you can go to the PUC. But the 251 already has the good faith provision in there and courts have held that the remedy for any kind of failure of good faith negotiation is to go to the PUC, not to bring the case in the first instance with the district court before you've gone down to the administrative agency below and said, I don't like the way Quest is negotiating. What about in the second instance, i.e. I'm sorry, is there a 206 and 207 damages action under any circumstance? No, Your Honor, and let me tell you a couple things, Your Honor. First of all, that issue was waived. They did not bring that question either- But I'm asking you, is there? Okay, I just wanted to get that. And the issue is waived in what respect? Sure. 206, pardon me? Why is it waived? Because it wasn't brought before either the district court or the PUC. It was brought for the very first time- You couldn't bring it before the PUC. It's not a PUC question. Well, it wasn't brought before the district court either, Your Honor. And as we mentioned, you can't raise that question on the first time here before the Ninth Circuit. Well, they were alleging a cause of action for damages. Yes, Your Honor, but it was based on 251, the good faith provision in 251 and 252. It was not based on 206 and 207. But that's indirect. 206, 207 is for violation of another requirement, which would have been 251 and 252. Yes, Your Honor, but 206 and 207 does not deal- Quest is not acting as a, quote, common carrier in this kind of context. It is not providing telecom services to Western Radio. It's negotiating as a competitor under 251 and 252 of the Telecom Act as a competitor. Cases have held, and the recent case that involved Council and the sister company for Autotel put it best when it said that, in making this determination, courts have found that Sections 206 and 207 of the TCA were enacted to provide a cause of action for consumers who were injured by errors in telegraphs and similar acts and omissions, and that these sections have been invoked successfully by parties who were not subject to the negotiation and approval process set forth in Sections 251 and 252 of the Telecom Act. So Quest is not acting as a telecom carrier. It has nothing to do with the provision of telegraph or others- Your Honor, it just seems to have a tight statutory response. My understanding of what you're saying is that Quest is not a common carrier for purposes of this proceeding. Absolutely. Because that is, if you as a consumer have an issue with Quest that caused you damage- Wait, you're reading other things into it. I mean, it says any person. It doesn't say consumer. And what I'm trying to find out is what in the language of 207 would exclude the situation. Well, if you go back to the definition of common carrier, Quest is not acting as a common- and that's in Section, I think, 101 of the Telecom Act. It is a common carrier for other purposes. It's a common carrier, but it's not acting as a common carrier when it's acting- when it's setting forth its obligations under 251 and 252 of the Telecom Act, which specifically tells incumbents like Quest, you have to negotiate and enter into interconnection agreements with your competitors, such as Western Radio or AT&T or anybody else. So 206 and 207 are completely different kind of cases. And that obligation has nothing to do with it being a common carrier? Well- Is it only because it's a common carrier that it has that obligation? Well, the statute refers to a common carrier. So what I'm saying is Quest is certainly a common carrier. I mean, they provide service to the general public for a fee. But in setting forth its-in complying with its obligations under 251 and 252, it's not acting as a common carrier, and it's dealing with a competitor as opposed to a customer of the carrier. Your Honor, really what we get down to here is that this is, to use an old cliche, putting the proverbial cart before the horse. It's premature because, for a couple of reasons, and I realize that I kind of don't have much time here, but what Western Radio should have done is, after it saw a draft of what Quest believed was the appropriate interconnection agreement, it should have, if it didn't agree with it, gone to the PUC and said, we don't believe this complies for these reasons. And therefore, the PUC would go ahead and then determine that. But instead, we were forced to go ahead and file or submit the interconnection agreement without their signature, ask the commission to go ahead and approve it if it felt that it complied, which ultimately the commission did do that. But instead, they ran to court. In the course of doing that, is it your understanding that the PUC would decide good faith issues? Let's suppose, for example, that they came in and said, because I was going to come up with another hypothetical about bad faith. They said, you know, since we finished this arbitration, we discovered that they lied to the arbitrator. They told him that their net profits were X and they were really Y, so they were bargaining a bad faith and therefore the agreement should not be entered in, should not be approved. Would the PUC have jurisdiction over that question? Yes, they would have jurisdiction. Do you know cases like that? Because I don't have a case that says that because I've never seen that happen. But because 251 sets forth the good faith provisions and courts have held that good faith claims should be brought in the first instance with the PUC, that is where the statute itself doesn't say that. As part of the interconnect agreement proceedings.  I'm sorry, go ahead. As part of the interconnect agreement proceedings. They can, yeah, right. There have been cases where that issue has been addressed in the- What if they found out about it a year later? Could they go to the commission then? I guess I would think that they could. If it had to do with the 251 and 252 process and some party claimed that there were some ex post facto bad faith negotiations, presumably they can go back and go to the PUC and say they did not act in good faith and I want to abrogate the interconnection agreement that you've already approved. But that would be to go to the PUC instead of running to the federal court. Here, the federal court doesn't even have the agreement that was finally entered into. So we're dealing with a case where they've brought a claim for money damages, seeking a jury regarding an interconnection agreement alleging civil rights violations and failure to negotiate in good faith of an interconnection agreement that is not even before the court. They mentioned in footnote one of their brief that they were going to refile the claim once it did become ripe, but they never did. So the interconnection agreement that the PUC approved in October of 2005 is in effect, has not been appealed. Meanwhile, we gave them the opportunity to withdraw this appeal, go file a new claim with the federal court that would now address the merits of the interconnection agreement that was approved in October of 2005. And Western Reader did nothing. So here we are dealing with these issues when the actual interconnection agreement that has been approved pursuant to the process set forth by Congress has not even been presented to any court. Not this court, and certainly not even the district court. Your Honor, I see we only have about four minutes, so I'm going to go ahead and defer to the PUC for the last four minutes. Thank you. May it please the court, counsel, I'm Erin Logson on behalf of the PUC and the commissioners. And my role here was to address the claims against the PUC, the Section 1983 claims. That did not come up in the opening argument. So unless the court has any questions about our arguments with respect to those claims specifically, I will rest. Do you agree on the argument that if there were problems of bad faith in the course of the negotiations during the 30-day window, that the PUC would entertain some mechanism to come before it and interject itself to cure the problem before it matured into a damage claim? I do agree that the PUC would have that authority. The authority isn't expressly spelled out anywhere, nor when I was working on this case could I find any specific rules governing what would happen there. But I imagine it would track similarly to what happened here, which is the parties couldn't agree. The parties could submit separate agreements, express their disagreements about the terms, and the PUC would make its decision then. Does the PUC have any authority to impose any kind of damage-type remedy? Had it found that while it approved Quest's proposal, its interpretation, it concluded it had negotiated in bad faith, can it enter any kind of damage award? I'm not aware of any authority, but I just don't know. The district court dismissed the claims against your client on jurisdictional grounds. Aren't you really limited to the question of whether or not the complaint states a claim against your parties? Why didn't the district court have jurisdiction on a 1983 case against your client? I think what the district court concluded was that the 1983 claim hadn't ripened yet. What do you mean? Well, if it hadn't ripened, doesn't that mean it didn't state a claim? If I have a claim that may arise in the future and I try to plead it today, there's no way I can state a claim. And why doesn't the court have jurisdiction over a 1983 case against your client? And I think that's the difficult question. As I stated in the brief, I couldn't find any Section 1983 ripeness claims like this, but I think the analysis in the American Medical College's case is appropriate because if you read the complaint, and I tie my argument to the complaint, the allegations in the complaint, particularly in the request for relief, alleges that the constitutional violations occurred in the terms of the arbitration order. And under the statutory process, that arbitration order is not the final order in this process. It's the order that precedes the entry of the interconnection agreement and the final commission order approving an interconnection agreement. That has happened now. Why was that an obvious problem? I didn't hear. I'm sorry. That has happened now, so why is it a problem now? Well, exactly, which is why our first argument was that the appeal of the dismissal of these claims is moot because what the district court said was the barrier to jurisdiction was a failure of the non-existent. We don't really know what he meant because he didn't really say what he meant, but if that was what he meant, it would be taken care of. Exactly. We've been waiting for this lawsuit for the past couple of years. It hasn't come yet, but the district court concluded that the claims were premature. They're no longer premature. They can be refiled at any time, and we can go from there. Why don't we just resurrect it in this case? Why don't we start over again? Because I think that the ‑‑ I thought the district court's prematurity reasoning was correct. There is a case that I cite in my right in this case. I think it's the Assiniboine and Sioux tribe cases, and it does mention that sometimes unappealed appellate courts will resurrect claims. I think it would certainly be within this court's discretion to do that, but I don't think the district court did anything wrong. What about the 11th Amendment slash sovereign immunity issue? Should we reach that? I don't think you should. I think the court ‑‑ the district court's decision on that was that the district court would consider all those issues when the case ripened. There's no reason to do that here. That can be done in the context of the suit we've been expecting for a couple of years. Okay. Thank you. We always like to be told we don't have to do something, whether or not we listen. I'll be really brief. I know I was out of time before. The remaining claims, I know this is clear, but I just want to repeat, they're for damages, and that can't become riper, and it's not moot. I want to switch gears for a moment. What about your opponent's argument about 207? That doesn't apply because the question is not a commentary for purposes of this provision. Well, there's certainly no authority in the plain language of the statute and the definition section for that approach. And what the statute says is any person, and a person includes a corporation, who's damaged by any prohibited act or any omission of any required act under this chapter by a common carrier. So the question is, if they're not operating as a common carrier, do you agree that they're not operating as a common carrier for purposes of 251, 252? No, I don't think so. I mean, they're a carrier. A carrier usually means somebody who has to provide service to anybody who comes along, and that's not the role that they're in here. Well, actually, they do have to provide services to Western Radio, even if Western doesn't have an interconnection agreement, they have to provide services that would then be covered by the tariffs that were filed. So, I mean, they are a carrier. They're taking Western's traffic and transporting it to their own customers, and vice versa, they're carrying traffic from their customers to Western's customers. So just because Western isn't an individual consumer doesn't make Quest somehow not a common carrier. There's no authority for that approach. And I was wrong. There is a case that I cited in the brief, the Northern District, California case, the AirTouch case, which did say that you can bring a good faith damages claim under 206 and 207, and apparently it wasn't appealed because that was in 1999. I also want to say that that issue wasn't waived. It just wasn't something that came up below that Quest didn't make the argument that it wasn't covered, and the complaint cites 207 for jurisdiction on page 3 of the complaint, paragraph 9. So we certainly raised it as one of our sources of jurisdiction. The problem with going to the PUC regarding damages is that 206 explicitly says you choose. You go to the PUC or you go to court. Actually, it doesn't say that. The commission in that is claiming the FCC and not the PUC. Is that not right? The commission, capital C. That may be correct. Again, there's very little 206 and 207 case law. If that's the case, then there's no jurisdiction at the PUC, and there's only jurisdiction either with the FCC and this court. Okay. Thank you. All right. Thank you both for the arguments. Case argued is submitted. Next case on calendar is Planned Parenthood v. American Coalition of Life Activists. Christopher A. Ferrara May it please the court. I'm Christopher A. Ferrara, and I'll be arguing the case on behalf of all of the felons. I'd like to focus on a couple of points that were addressed in the motion practice concerning submission of the case without oral argument. And the first of these is opposing counsel's contention that the only issue before this court is the interest on punitive damages. And I think that that is flatly contradicted by the language of 28 U.S.C. 1961. That's not contradicted by our order. Yes. We have an order which says that. I know that, Your Honor. And the literal reading of the order supports that contention, but it never occurred to opposing, to co-counsel and I, that that's the way the order should be read because if you read it that way, the order doesn't make sense. And that's for two reasons. First is that the date of entry is the determinant. You're essentially asking, just preliminarily asking Mr. I mean, it's not a question of how you read it. It's what it says. So you're asking us to reconsider. I guess there's something we could do, but. I guess I am. Although there's always the principle that a court's orders have to be given a common sense reading. And frankly, it never occurred to us to read it any other way. Even though you're right, that's literally what it says. But the date to which the computation of interest is inexorably connected, as the Supreme Court made clear in Kaiser aluminum, is the date of entry. And you can't have two different dates of entry for the same judgment. According to opposing counsel's argument, if we were to prevail and punitive damages were to be computed from the date of the amended judgment and entered on July 12, 2006, it would have to follow that the other components of the judgment would have interest computed from that date as well. Otherwise you'd be effectively arguing that there are two different dates of entry for the same judgment. And also it should be noted that the proposed amended judgment, which became the amended final judgment below, treats all of the components of the judgment as one amount. And they're all added together under each subparameter for awarding damages for each plaintiff against each defendant. They're all added together. Let's cut to the chase on the basic question. Under 1961, there seems to be no doubt that there's interest available from the time of the original judgment. The problem is procedure one, that Rule 37 wasn't complied with. Is that where we are? Certainly a procedural problem, yes. So, it's very hard for me to understand why we have these two provisions which seem to cut in opposite directions because if it's automatically applicable and doesn't have to be stated, then why does it have to be stated? But Rule 37 seems to say it does have to be stated. So, the question is, obviously what happened, or let's assume that what happened, one possibility of what happened is that the prior panel just screwed up. They just didn't realize that under Rule 37 they had to say something they didn't say. If we came to that conclusion and we simply so held now and or recalled the mandate and amended the prior opinion, wouldn't that solve the whole problem? It would, but I would urge the Court not to do that for two reasons. First, it's arguable that the panel did not screw up. Consider that we had a punitive damages award that was simply outrageous. It was excessive by 96% as this Court itself determined. And so, the Court could well have been thinking in and entering this reduced amount of punitive damages and directing the entry of a money judgment for 96% less that the entry should begin from July 12, 2006, not only as to the punitive damages, but as to the other components, which originally were a small part of this judgment. Secondly, even if the panel- I'm not giving your client a windfall because since they're paying a whole lot less, they're going to pay a lot less. They're not going to pay interest on the amount that they aren't paying. They're only going to pay interest on the amount that they are paying. So, why should they be getting this windfall? That brings me to my fallback argument. Let's assume the panel did not foul this up and that there is no equitable consideration at work in the panel's failing to include interest instructions in the mandate. Nevertheless, the plaintiffs should not be permitted at this stage of the game to come forward almost as an afterthought, really, and say, oh, and by the way, we would like interest on the $15 million, which remain of this judgment, even though we never mentioned interest by way of the appropriate means indicated by the Supreme Court, which would be a motion to recall the mandate and modify it. But we have a case which essentially says, was it the Longman or something like that, which addresses this very problem and says that the Court of Appeals could either deal with it by recalling the mandate sui sponte, or, in fact, could simply, in the second appeal, on sort of, I suppose one would be saying, you'd be overruling the law of the case, and granted there was just a gross error, and we would just enter an order now for interest. Well, frankly, that's an approach which had been taken earlier in the litigation with respect to the decisions of a prior panel. But I still say that the Court ought to be guided by what the Supreme Court said in Kaiser Aluminum, that the integrity of the process might implicate the need to amend the original mandate, but not the convenience of a litigant. And I think that's all that's at work here. The point is for their convenience. I think what we're talking about is not the integrity of the processes of this court, which the Kaiser Aluminum decision indicates is the basis for even considering a recall of the mandate. We're dealing with something amounting to the convenience of the plaintiffs, who had every opportunity back in 2005 to move for a recall of the mandate, who had, in fact, every opportunity up until today to file a motion, a proper motion for recall of the mandate. Instead, they reduced their position to a mere suggestion in the final point of their brief, and I don't think there's any case law which would support that approach to attempting to modify the mandate at this late stage in the game. Rule 37b is clear. If the court modifies or reverses a judgment with direction that a money judgment be entered in the district court, and I'm quoting from the Westinghouse case, which is a Second Circuit case, but the logic applies everywhere, I think, then as long as there's some indication that the mandate is directing entry of a particular money judgment, the district court is bound by that mandate and can only award interest from the date of the amended judgment on remand. And as the Eleventh Circuit said in the Sundin case, and logic which I think applies in every circuit, the district court in that case simply has, and I'm quoting, no choice in the matter, but to follow the mandate and enter judgment awarding interest effective on the date. But assuming that's true, that doesn't leave us with no recourse. No, I suppose you could effectively say the panel erred and effectively, I don't know how I should characterize it, overrule the prior panel on this issue. But as I've said, I don't think there's any equitable grounds for doing that. I don't think the integrity of the court's processes is at stake. I think it's the convenience of the plaintiffs which would be the only motive for doing that. Now, in terms of the process, the court didn't pay attention to Rule 37 and wasn't deliberately withholding the interest. It was part of the underlying judgment of the district court. They didn't eliminate the damages. They reduced them by a substantial amount, admittedly, but they left intact some component of damages which had been awarded as an option to the plaintiffs to accept or reject that limit. I understand. So in that sense, there's some aspect of fairness of the process. I am troubled by the fact that the non-parenthood didn't see clarification by way of recalling the mandate, which is a clear remedy. That's another issue. I appreciate Your Honor's thinking on the matter, but if we were to say that the mere omission of interest in a mandate by a court which directs the entry of a money judgment that has been substantially reduced is the grounds for defending the integrity of the process, the simple fact of the omission, then basically there would be no reason ever to overlook and excuse the failure to move to recall the mandate. The court would simply say, well, the prior panel overlooked it. That's all we need to know. So the integrity of the process will automatically supply interest. I'm not suggesting that's what should happen. I'm just saying that's one option of analysis. Yes, but here the only reason for even reaching the question is the simple fact of the omission. We have nothing in the record that indicates that. But this is what's so bizarre about it. We also have a directive by a statute that says that you automatically get the interest. So they had no authority not to give the interest. The only thing I can say is that in a case plagued with anomalies, this is another one. But I think there may be some inadvertent wisdom in what the court did because of the fact that most of this punitive damages award was unconstitutional. The court came very close to eliminating the punitive damages completely, and the only reason we still have a substantial verdict is the accumulation of the awards to the clinics plus the trebling of the damages under RICO. But I think there's a certain rough justice in not awarding the interest. These people have been punished enough. The fact remains that they had no authority not to do it. Am I right about that? I don't know if that's the case because then you get to the issue of whether the damages were ascertainable as to the punitive award when the entire award was inherently suspect from the beginning. So the prior panel could have said, look, because the entire award was suspect, we exercise our discretion to peg all of the interest from the date of the amended judgment on remand. I don't think 1961 precludes that as a matter of law. I think there is discretion there. Okay, thank you. I'm out of time. Can I have perhaps a minute for rebuttal, Your Honor? That's all. Good afternoon, Your Honors. Maria Voulot may have pleased the Court on behalf of the plaintiff's apologies. I want to very quickly address the beginning of my adversary's argument about the scope of this appeal. There is nothing ambiguous about the prior panel's order. We specifically made a motion to this Court to limit the appeal to the issue of interest on the punitive damages award. And the panel, in an order dated January 24, 2007, said that our motion was granted, and I quote, the scope of this appeal is limited to the issue of whether the district court erred in awarding post-judgment interest on the punitive damages award from the date of the district court's original February 22, 1999 judgment. So compensatory damages is not on appeal, nor should it be. I also want to note, Your Honors, that there does not appear to be a dispute, nor should there be, that the law in this circuit and elsewhere is clear that when there is a reduction in damages after appellate proceedings and remand proceedings, that the interest award, the post-judgment interest award, runs from the date of the initial judgment. And that is the Tinsley case, where this Court remanded for consideration of contributory damages by the plaintiff, and there was a reduced award. And in that case, the district court, as affirmed by the Ninth Circuit, awarded those damages from the initial judgment date. The Perkins case was a reduced attorney's fee award, same principle as to interest. And very interestingly, the Handgards case, this Court, in the first appeal, reversed and ordered a new trial on a different standard, a clear and convincing evidence standard. And after the second trial, there was a larger jury verdict, and the Court held that post-judgment interest ran for the shorter, the lower amount, from the initial judgment after the first trial. And, of course, the Ace case, which is a District of Alaska case, which came up on appeal to this Court, punitive damages reduced post-judgment interest from the initial award, and the Johansson and the Dunn cases in the Eleventh and Third Circuits. And that seems to be substantively correct. Yes. But then we have this procedural problem, which is Rule 37, which says that if a court modifies a judgment, which they certainly did, then it must, with the direction that a money judgment be entered, which is what they did, the mandate must contain instructions about the allowance of interest that it didn't. Understood, Your Honor. I would like to address that. A few very important points that I think Judge Burr is on your address. Section 1961, which is the congressional statute, not the rule, provides for mandatory post-judgment interest from entry of judgment. And the legal question is when was that judgment entered, which judgment? And here the law is clear that it's the earlier judgment from which post-judgment mandatory interest should run. So I don't believe the panel could have done anything differently. But in addition, Your Honors, I don't believe that the panel had to enter a ruling as to judgment in the mandate, because the Rule 37 specifically says that that is required only in the circumstance where there is a direction of entry of a specific monetary judgment. And the prior panel did not do that. The mandate, which is on page 69 of the record, and the court's decision on which the mandate was based is on 87. And what they did was they ordered, they remanded for a new trial unless physicians accepted the remitter. They specified an amount. They did specify the amount, true. But had we accepted the remitter, there is no question, and I'm sorry, had we not accepted the remitter and there was a new trial under all of the case law, after the new trial had we won, the interest would have ran from the 1999 judgment anyway. So it certainly can't be the situation in the opposite where we actually accepted the remitter that post-judgment interest should run from the 2006. The other reason is, two other reasons. There is an explicit provision in the 1999 judgment on post-judgment interest. The 1999 judgment, which is at the record on page 67, specifically provides in paragraph 5 that each plaintiff shall recover the aforementioned damages with interest at the rate as provided by law citing 1961 along with the plaintiff's cost. So when the en banc panel affirmed everything but for punitive damages, they affirmed that as well. Of course, it was mandatory, but it was already in the judgment. There was no reason for this last panel to specify interest. They remitted the punitive damages award, and the interest was going to run from the early award anyway, and now it runs from the earlier date but as to the lowered amount of the punitive damages. You say there's no reason. Rule 37 doesn't make it quite so easy. But the other thing I would direct your honor to, Judge Fischer, is the Mount Hood case, which addressed this specific question. In Mount Hood, the case went back three times on appeal, including up to the Supreme Court. And with respect to post-judgment interest, the other side, as here, argues that the Briggs case required that the post-judgment interest be in the mandate, and the court there disagreed and said that's not what Rule 37 requires in the circumstance where recovery was already ascertained previously. It's not the situation, and it's an important distinction, as in Briggs and the Sunbeam case that my adversary points to, where the issue is pre-judgment interest, where the district court on remand orders pre-judgment interest, which is an element of damages. Post-judgment interest is merely a provision to compensate the injured party for the difference in time, the time value of money. It's not an element of damages. It's not adding anything new to the judgment. I mean, Mount Hood, read as thoroughly as you're reading it, sort of eliminates Rule 37 in situations in which the judgment is decreased. No, Your Honor. In situations where the recovery that is being challenged was already ascertained previously, if the district court did not add something to it, that could be a pre-judgment interest. Instead of increasing it. Well, it could be a reduced damages award plus pre-judgment interest, which would not be appropriate. But a reduced damages award with post-judgment interest is just what 9-1-1 requires. Therefore, Rule 37 doesn't apply to post-judgment interest on a reduced damages award. That's what I believe, at least this Court has held previously, which to answer Judge Fischer's question is why we went back to the district court. When the mandate did not indicate anything about interest and we accepted the remitter and the issue was raised, we litigated it before the district court. I don't think there's anything to be challenged about that. Certainly. It would have been simpler. I mean, we would have eliminated this problem if you had simply not done it. But the Mount Hood case as well as the other, you know, the mandate. Mount Hood says all of it was changed. There was no change in damages as a tolling rationale. There was no change in the amount. Here there was a change in the amount. That's true, Your Honor, but I don't think that that answers the question of the procedure. Well, sure it does because it says when Rule 37 says if there is a modification, then the amount of damages, then there has to be a, by its plain language says that the court must direct it. The whole point of it was to go back to Briggs and saying making sure the appellate court tells the district court what it's supposed to do so that the district court doesn't have to exercise any kind of implicit or inferential efforts to carry out what it thinks the mandate is. Whether Section 1961, you know, has primacy over that or not, I don't know. Your Honor, the Mount Hood case actually, while the end result was the same amount with different legal theories, there actually was not a situation where the mandate entered any kind of reduced or entered any kind of a requirement. But there was here. But there was the question as to whether the mandate had to because what happened in Mount Hood was the district court in reconsidering the tolling analysis then entered a judgment and so the issue was ripe as to whether the circuit court had to address it. There was no modification. There was no ultimate modification of the damages. That is true. And here there was. That is true and the modification was reduced. So then the question is if this court were to be concerned about the procedural question, there's certainly ample authority for this court to address it on the appeal, whether that be by addressing it on appeal or recalling the mandate. And Judge Berzon, I think you were referring to a case, and I would just cite you, the Loffman case in the Third Circuit. Judge Becker opinion with his footnote. Exactly. And there's also quite, Judge Slobitzer also in the Third Circuit in the Dunn case, which was specific to punitive damages, she actually concluded to recall the mandate. But in all of those cases they're saying that the issue was before the court on appeal and 1961 is mandatory as to post-judgment interest and what do we do? And certainly, you know, the defendants here should not benefit from a procedural issue where there's mandatory judgment required here. Thank you. Now, literally the mandate did not say enter any particular judgment. That's correct, Your Honor. And back to your original proposition that the mandate didn't say enter a judgment for X amount. That is correct. It said engage in the remittance. That's correct, Your Honor, and I think for that reason alone, Rule 37 doesn't even apply here. And it would be an anomalous situation if the district court had not affirmed the full punitive damages but reduced it, post-judgment interest would have been fine. Or had we not accepted the remittance, if there was a new trial and then we got a damages award, it would be from 1999. It doesn't make sense for the result to be different in these circumstances. The scope of the new trial might include the possibility that you would lose. Your Honor, I'm not even sure if that was the scope of the new trial, and that was whether or not it was a full new trial or just a new trial on damages. It was unclear from the decision, but we made our decision nonetheless. And then is it of any significance that the form of judgment entered by the district court upon your acceptance of the remittance is couched in terms of an amendment? It's an amended judgment. Is there any significance in the fact that instead of entering a judgment for X amount, with interest from a date of the first one, that the form that it took was to amend the original judgment? Is there any significance in that? No, Your Honor, because I don't believe that the judgment that is presently here is an amended judgment. There was an amended judgment on remand earlier in the proceedings, after the punitive damages remand. I was picking that language up from one of the briefs. The reality here is that the judgment actually should benefit the defendants, because otherwise we had, so the district court had to do something, and that's where we were. All right. Thank you. Thank you. You can have a minute. Thank you, Your Honor. First of all, there's another reason the order, if it's read literally, produces an impracticable result, and that's because the Supreme Court has made it clear in Kaiser Aluminum that there must be a single applicable rate of interest on a judgment as well. And what would happen here is that if their argument is correct and we prevail on the punitive damages calculation issue, we would have calculation of punitive damages from July of 2006 at a rate of 5.27 percent, whereas the other components of the judgment would have to be computed at the rate, in effect, of 1999, which is 4.584 percent, another anomaly. Mound Hood, by the way, is not citable for a Rule 37 discussion because it didn't involve Rule 37. Mound Hood involved precisely what we're talking about under Rule 37A, where a judgment is not modified. The amount of the judgment remained precisely the same, and Mound Hood doesn't even discuss Rule 37. As far as the Tinsley and the Hangard cases, those cases likewise involved no change, no modification whatsoever in the amounts of the judgments involved in those cases, but remands for proceedings which resulted in different amounts. So there again, Rule 37B doesn't provide, doesn't apply, and none of the cases cited in my opponent's brief are apposite under Rule 37B. All right. Fine. Thank you both. Case argued as submitted.
judges: Leavy, Fisher, Berzon